**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **VOLODYMR SKRYPNYK,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-808-J** |
| | ) | |
| **CHRIS GANTT[1] et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Volodymr Skrypnyk, a noncitizen[2] and Ukrainian national proceeding with counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement (ICE). (ECF No. 1). United States District Judge Bernard M. Jones II has referred the case to the undersigned magistrate judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). With leave of Court, Petitioner filed a Supplemental Pleading. (ECF No. 16). Respondents filed a response to the Petition, (ECF No. 12), and a response to the Supplemental Pleading, (ECF No. 17). The matter is at issue.

For the reasons set forth below, the undersigned recommends the Court **GRANT IN PART** Petitioner's request for habeas relief and order Respondents to provide

[1] Chris Gantt was announced as Warden of Cimarron Correctional Facility in May 2026. He replaces Scarlet Grant and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. 1101(a)(3)).

Petitioner with an individualized bond hearing under 8 U.S.C. § 1226(a) within ten days or otherwise release Petitioner.

## I. BACKGROUND AND PETITIONER'S CLAIMS FOR RELIEF

Petitioner is a native and citizen of Ukraine who entered the United States on July 16, 2024. (ECF No. 1-6:1). At that time, and pursuant to 8 U.S.C. § 1182(d)(5)(A), Department of Homeland Security (DHS) officials granted Petitioner Ukrainian Humanitarian Parole which was valid through July 15, 2026. (ECF Nos. 1-3; 12:2). Petitioner was not detained upon entry. (ECF 12:2). On February 6, 2026, ICE officials encountered Petitioner in Erick, Oklahoma and detained him. (ECF No. 1-4). On February 7, 2026, DHS officials issued a Notice to Appear to Petitioner (NTA) charging him as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid entry document. (ECF No. 1-6). The NTA designated Petitioner as an "arriving alien." *Id.* Petitioner applied for re-parole on February 17, 2026, and filed an asylum application on April 14, 2026. (ECF No. 1:6). An Immigration Judge denied his first motion to terminate removal proceedings, finding that service of the NTA "served as notice to the Respondent that his parole status has been terminated." *Id.* A second Immigration Judge denied his second motion, concluding that "an immigration judge has no authority to review decisions terminating parole." (ECF No. 12-6:1).

On July 23, 2026, an Immigration Judge ordered Petitioner removed. *See* EOIR Automated Case Information System, acis.eoir.justice.gov/en/caseInformation (last visited Sept. 29, 2026). Petitioner appealed the decision to the Board of Immigration Appeals on July 26, 2026, and that appeal remains pending. *Id.* Accordingly, the removal

order is not administratively final.[3] Petitioner is currently detained at the Cimarron Correctional Facility in Cushing, Oklahoma.[4]

Petitioner asserts three claims for relief: (1) Respondents unlawfully terminated his humanitarian parole, in violation of 8 C.F.R. § 212.5(e)(2)(i) and the *Accardi* doctrine, by arresting and detaining him before providing written notice of termination; (2) Petitioner's detention without that notice violates his procedural due process rights under the Fifth Amendment; and (3) a violation of the Administrative Procedure Act (APA).[5] (ECF No. 1:2, 7-14)

Petitioner's Supplemental Pleading adds allegations in support of these claims. It asserts that his continued detention rests on that same invalid termination, and that his later immigration court proceedings did not cure the defect because the Immigration Judge declined to review it. (ECF No. 16:2–6).

Petitioner seeks his immediate release under the conditions of his prior parole. (ECF No. 1:13-14). In the alternative, he asks for a bond hearing at which the Government bears the burden of justifying his continued detention by clear and convincing evidence, (ECF No. 1:2–3), or an evidentiary hearing at which Respondents

---

[3] An order of removal "shall become final upon the earlier of – (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

[4] *See* https://locator.ice.gov/odls/#/details (last visited Sept. 29, 2026).

[5] To the extent Petitioner intended to raise an APA claim, the Court should decline to reach it. APA review extends only to agency action "for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and habeas supplies that remedy here. *See Johal v. Bondi*, No. CIV-25-1408-J, 2026 WL 517529, at *3 (W.D. Okla. Feb. 25, 2026).

must produce any pre-arrest parole-termination decision and notice. (ECF 16:7). Lastly, Petitioner requests attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. (ECF No. 1:14).[6]

## II. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III. ANALYSIS

### A. The Court has Jurisdiction, and Exhaustion is not Required

Respondents contend the INA's channeling and jurisdiction-stripping provisions bar review and that Petitioner failed to exhaust his administrative remedies by not appealing to the Board of Immigration Appeals (BIA). (ECF No. 12:5-9, 12-13). Neither argument precludes relief. In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court explained that § 1252(g)'s jurisdictional bar is narrow in scope and applies only to "three discrete actions" – the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. The Supreme Court found it "implausible that the mention of three discrete events along the road to

[6] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

Judges in this District have rejected these jurisdictional arguments.[7] Here, Petitioner is not challenging the underlying merits of his removal proceedings, but rather, Petitioner contends that ICE unlawfully revoked his parole, rendering the resulting detention as unlawful. Accordingly, the undersigned recommends that the Court follow this District's consistent approach and consider the Petition.

Nor does exhaustion bar relief. "Exhaustion is typically nonjurisdictional," and courts "treat a rule as jurisdictional only if Congress clearly states that it is." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416-17 (2023) (citation modified). "Where Congress has not clearly required exhaustion," making it nonjurisdictional, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Exhaustion of administrative remedies is nonjurisdictional here because § 2241 does not require it. *Soberanes*, 388 F.3d at 1310.

The Immigration Judge disclaimed authority to review the termination of Petitioner's parole, relying on binding BIA precedent. (ECF No. 12-6:1) (citing *Matter of Arambula-Bravo*, 28 I. & N. Dec. 388, 394 (BIA 2021)). And on Respondents' own theory

---

[7] *See, e.g.*, *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) (concluding the Court's "ability to consider the petition is not barred by § 1252(g)" as the petitioner was "not seeking review of the Executive's decision to execute an order of removal" but rather arguing "he is detained in violation of the INA") (citation modified); *Nguyen v. Bondi*, No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction here."); *Bassam v. Grant*, No. CIV-26-657-D, 2026 WL 1832382, at *2 (W.D. Okla. June 25, 2026) (collecting cases).

that Petitioner is an arriving alien, the Immigration Court could not redetermine his custody. *See* 8 C.F.R. § 1003.19(h)(2)(i)(B). Requiring Petitioner to exhaust a remedy the agency itself disclaims would serve no purpose. Nor does 8 U.S.C. § 1226(e) bar review. That provision shields discretionary judgments regarding the application of § 1226, but Petitioner was paroled under § 1182(d)(5)(A), not § 1226, and he challenges the legal authority for his detention rather than any discretionary custody decision. *See Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018) (§ 1226(e) does not bar challenges to "the extent of the Government's detention authority under the 'statutory framework' as a whole").

**B. The Termination of Petitioner's Parole**

The parties agree that Petitioner was paroled under 8 U.S.C. § 1182(d)(5)(A) upon his entry into the United States in July 2024. *See supra*. Under that provision,

> [t]he Secretary of Homeland Security may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of the Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

The applicable implementing regulations set forth two mechanisms by which a grant of parole under § 1182(d)(5) may be terminated. First, "[p]arole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or (ii) if not departed, at the expiration of the time for which parole

was authorized...." 8 C.F.R. § 212.5(e)(1). Alternatively, parole may be terminated "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.* § 212.5(e)(2)(i). When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. *Id*.

Petitioner's claims raise two separate, albeit interrelated questions: what became of his parole, and which authority governs his custody. The regulations addressing parole termination and the statutes authorizing detention answer different questions. Section 212.5(e) does not indicate whether a noncitizen's detention is authorized under § 1225 or § 1226. And § 1182(d)(5)(A) is not a detention authority at all. It provides only that upon termination of parole, the noncitizen's "case shall continue to be dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A); *see Clark v. Martinez*, 543 U.S. 371, 385 (2005). The undersigned first turns to the question of parole and then addresses the statute upon which Petitioner's detention depends.

Petitioner's parole was in effect when he was arrested. It had not expired, he had not departed the United States, and no written notice or charging document had been served. (ECF Nos. 1-4:1-2 & 1-6). Respondents identify the NTA served the following day as the document that "revoke[d] his parole." (ECF No. 12:9). The record also does not

support Respondents' description of Petitioner as "re-detained." *Id.* at 2. Petitioner was paroled at a port of entry on advance travel authorization, had never been detained, and was not placed in removal proceedings until after his arrest. (ECF Nos. 12:2 & 12-1).

Petitioner contends that Respondents violated § 212.5(e)(2)(i) by arresting him before serving the written notice that terminates parole, and that the violation deprived him of liberty without due process. (ECF Nos. 1:7-14; 16:2-6). Service of an NTA can supply that notice. *See Todyrenchuk v. Warden of Diamondback Corr. Facility*, No. CIV-26-1243-J, 2026 WL 2186977, at *2 n.2 (W.D. Okla. July 29, 2026) (service of an NTA "constitutes proper notice that an official has terminated an alien's humanitarian parole"); *Ihor B. v. Regalado*, No. 26-CV-420-JDR-SH, 2026 WL 2043198, at *6 (N.D. Okla. July 15, 2026) (same). By the time of his arrest, Petitioner had lived in the community for nineteen months under a valid employment authorization, raising two young children, one of whom is a United States citizen, with no criminal history. (ECF Nos. 1:2 & 1-4:1-2). The Court need not decide, however, whether serving that notice the day after Petitioner's arrest violated the regulation or the Due Process Clause, because the answer would not change the relief to which Petitioner is entitled.

Even assuming a violation, habeas tests the lawfulness of present custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody."). Petitioner asks to be released under the conditions of his prior parole. (ECF No. 1:13-14). But that parole no longer exists. Respondents served the NTA terminating it on February 7, 2026, within the 48-hour window in which the regulations governing warrantless immigration arrests contemplate

a determination "whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued." 8 C.F.R. § 287.3(d); (ECF No. 1-4). And Petitioner's parole period independently expired on July 15, 2026. 8 C.F.R. § 212.5(e)(1)(ii); (ECF No. 16:5). The Court cannot restore Petitioner to a status that has since lapsed on its own terms.

This case is accordingly unlike those in which courts have ordered release after ICE revoked a noncitizen's Order of Supervision (OOS) without complying with 8 C.F.R. § 241.13(i). *See, e.g.*, *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025) (ordering immediate release under the terms of the petitioner's previous OOS); *Ahmed v. Olson*, 2026 WL 836123, at *5-6 (E.D. Ky. Mar. 26, 2026) (collecting cases granting immediate release where detainees were denied notice under § 241.13). Section 241.13(i) permits revocation only on an individualized determination, which ICE bears the burden of establishing, and requires notice of "the reasons for revocation" and "an initial informal interview promptly after [the noncitizen's] return to [ICE] custody," at which he may submit evidence. 8 C.F.R. § 241.13(i)(1)-(3).

In contrast, Section 212.5(e)(2)(i) requires only written notice, which a charging document supplies. *See Matter of Arambula-Bravo*, 28 I. & N. Dec. 388, 395 (BIA 2021) ("[N]o hearing is required to terminate parole."); *Todyrenchuk*, 2026 WL 2186977, at *2 n.2 ("[P]etitioner was not entitled to a parole termination hearing at which his safety and flight risks were assessed."). And an OOS detainee is held under a final order of removal, with the revocation procedures his only avenue to contest custody, so a defective

revocation leaves him no forum at all. Petitioner is not subject to a final order of removal. (ECF No. 16:3).

As explained below, his detention is instead governed by § 1226(a), which "contemplates individualized custody determinations and authorizes release on bond or conditional parole pending completion of removal proceedings." *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *3 (W.D. Okla. June 29, 2026). Even if a procedural due process violation occurred, the remedy would be the process that was due, and that statute supplies it. *See id.* ("[T]he process afforded by § 1226(a) itself serves as the mechanism through which a detainee's liberty interest is protected."); *Navarrete v. Mullin*, No. CIV-26-224-SLP, 2026 WL 2323345, at *2 (W.D. Okla. Aug. 11, 2026) (process owed to a noncitizen with a protected liberty interest was a bond hearing under § 1226). Petitioner has now been detained for more than seven months without any individualized assessment of whether his custody is warranted. (ECF No. 1:12-13). Section 1226(a) provides that assessment, and this Court has declined to order release on parole-related due process claims where that statute governs. *See Todyrenchuk*, 2026 WL 2186977, at *2-3; *Mesa v. Figueroa*, No. CIV-26-775-J, 2026 WL 2123868, at *2 (W.D. Okla. July 23, 2026).

The Petition is not moot. Petitioner remains detained without a bond hearing, and the Court can order one. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (a case is moot only when a court cannot grant "any effectual relief whatever"). Respondents' argument that expiration of Petitioner's parole renders his detention lawful under § 1225(b)(1),

(ECF No. 17:2-3), concerns detention authority rather than mootness and is addressed below.

**C. Section 1226(a) Governs Petitioner's Detention**

"[B]ecause the legality of Petitioner's continued detention depends upon the source of the Government's detention authority," the undersigned must identify the governing statute. *Zhakhonov*, 2026 WL 1865418, at *2. Section 1225 "applies primarily to aliens seeking admission to the United States," while § 1226 "generally governs the process of arresting and detaining" noncitizens "pending [a decision on] whether the alien is to be removed from the United States." *Jennings*, 583 U.S. at 288 (citation modified); *see Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026) ("We hold that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A).").

Respondents contend Petitioner is an arriving alien subject to mandatory detention under § 1225(b)(1), whether his parole ended in February or in July 2026. (ECF Nos. 12:2, & 17:2). This Court has repeatedly rejected that position. *See Todyrenchuk*, 2026 WL 2186977, at *1 n.1 (termination of humanitarian parole "does not automatically return the noncitizen to mandatory detention under 8 U.S.C. § 1225(b)(1)"); *Zhakhonov*, 2026 WL 1865418, at *2–3 (same, and holding that § 1226(a) governs); *Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560, at *2 (W.D. Okla. Apr. 7, 2026) (same); *Ochilov v. Grant*, No. CIV-26-526-R, 2026 WL 1896139, at *1–2 (W.D. Okla. July 1, 2026) (rejecting the "theory that Petitioner retains his status as an 'arriving' noncitizen subject to

mandatory detention under § 1225(b)(1)”); *Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026) (“[R]evocation of parole under § 1182(d)(5) does not render a noncitizen in Petitioner’s circumstances subject to detention under § 1225(b)(1).”).

Petitioner's detention “is not part of the inspection process,” and it did not “arise from an attempted entry at a port of entry.” *Zhakhonov*, 2026 WL 1865418, at *3. Petitioner “was paroled into the United States, permitted to reside in the interior, and complied with the conditions of his release before being re-detained.” *Todyrenchuk*, 2026 WL 2186977, at *3. “Under those circumstances, Petitioner’s detention is more naturally characterized as detention ‘pending a decision on whether the alien is to be removed from the United States’ within the meaning of 8 U.S.C. § 1226(a)." *Id.* (quoting *Rebolledo v. Figueroa*, No. CIV-26-958-J, 2026 WL 2138027, at *2 (W.D. Okla. July 24, 2026)).

“Unlike § 1225(b)(1), § 1226(a) contemplates individualized custody determinations and authorizes release on bond or conditional parole pending completion of removal proceedings.” *Zhakhonov*, 2026 WL 1865418, at *3. Respondents have held Petitioner since February 6, 2026, without an individualized custody determination. Because a bond hearing is “the very process Congress prescribed for detainees held pursuant to § 1226(a),” the Court should order Respondents to provide one. *Id.*; *see Todyrenchuk*, 2026 WL 2186977, at *3 (“[T]he Court concludes the proper remedy in this case is not immediate release, but an individualized bond hearing before an Immigration Judge exercising jurisdiction under § 1226(a).”); *Santillan Quiroz*, 180 F.4th at 1251 n.13

(directing the district court to order a bond hearing within seven days "[b]ecause [the petitioner] can properly be subject to detention under § 1226(a)").

The Court should thus grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) within ten days or otherwise release him. The Court should decline Petitioner's request to require the Government to bear the burden of justifying his continued detention,[8] as well as his alternative request for an evidentiary hearing.[9]

## IV. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT IN PART** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within ten days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within ten business days of the Court's order.[10]

---

[8] Petitioner asks the Court to require the Government to prove by clear and convincing evidence that no conditions of release would mitigate any risk of flight or danger. (ECF No. 1:2-3). This Court has repeatedly declined to order burden-shifting at this stage. *See Zhang v. U.S. District Court*, No. CIV-26-1022-D, 2026 WL 2323190, at *1 (W.D. Okla. Aug. 11, 2026) (declining "to place the burden on the Government to justify Petitioner's detention pending removal proceedings, at this time"); *Rangel v. Mullin*, No. CIV-26-568-D, 2026 WL 1625653, at *2 n.2 (W.D. Okla. June 5, 2026) (same). The undersigned does not recommend it here.

[9] Petitioner alternatively asks for an evidentiary hearing at which Respondents must produce any pre-arrest parole-termination decision and notice. (ECF No. 16:7). No such hearing is necessary. The undersigned has accepted that no written notice preceded Petitioner's arrest. Further factual development would not change the recommended remedy.

[10] Entry of this recommendation renders Petitioner's Motion for Status Check (ECF No. 19) moot.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **October 6, 2026**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## V. STATUS OF REFERRAL

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on September 29, 2026.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE